UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DOVER GLEN CONDOMINIUM ASSOCIATION.**
**on behalf of themselves and others similarly situated,**

      Plaintiff,

vs.                                Case No. 2:22-cv-11468
                                          Honorable Linda V. Parker

**OAKLAND COUNTY, a Governmental Unit,**

      Defendant.

| | |
|---|---|
| Jason J. Thompson (P48184) | William H. Horton (P31567) |
| Kathryn E. Milz | John R. Fleming (P79748) |
| SOMMERS SCHWARTZ, P.C. | GIARMARCO, MULLINS, & HORTON, PC |
| One Towne Square, 17th Floor | 101 West Big Beaver Road, Tenth Floor |
| Southfield, MI 48076] | Troy, MI 48084-5280 |
| (248) 355-0300 | (248) 457-7000 |
| jthompson@sommerspc.com | bhorton@gmhlaw.com |
| kmilz@sommerspc.com | jfleming@gmhlaw.com |
| | |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
PRELIMINARY APPROVAL OF: PROPOSED CLASS ACTION SETTLEMENT;
NOTICE AND NOTICE PLAN; AND ATTORNEY FEE AND EXPENSE AWARD**

     Pursuant to Fed. R. Civ. P. 23(e) Plaintiff DOVER GLEN CONDOMINIUM

ASSOCIATION ("Dover") respectfully moves this Honorable Court for an Order granting this

Motion for preliminary approval of proposed class action settlement; notice and notice plan; and

attorneys' fee and expense award.  This motion is based on all the files, records, and proceedings

herein, and is supported by the memoranda of law and affidavits filed by counsel, and is not

contested by Defendant.

Respectfully submitted,

Dated July 12, 2022                    SOMMERS SCHWARTZ, P.C.

*/s/ Jason J. Thompson*
Jason J. Thompson (P47184)
Kathryn E. Milz
One Town Square, 17th Floor
Southfield, MI  48076
(248) 355-0300
jthompson@sommerspc.com
kmilz@sommerspc.com

*Attorney on behalf of Plaintiff*
*Dover Glen Condominium Association*

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DOVER GLEN CONDOMINIUM ASSOCIATION,**
**on behalf of themselves and others similarly situated,**

      Plaintiff,

vs.                                    Consolidated Case No. 2:22-cv-11468
                                       Honorable

**OAKLAND County,**
**a Governmental Unit,**

      Defendant.

_____

Jason J. Thompson (P48184)
Kathryn E. Milz
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, MI  48076]
(248) 355-0300
jthompson@sommerspc.com
kmilz@sommerspc.com

_____

**MEMORANDUM OF LAW RE: PRELIMINARY APPROVAL OF PROPOSED CLASS**
**ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES................................................................................iii

INTRODUCTION ...........................................................................................1

ARGUMENT ..................................................................................................2

     I.     THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND
           SHOULD BE PRELIMINARILY APPROVED BY THE COURT ...................2

          A.     Summary of Key Settlement Terms........................................2

                 1.     The Claim Form ....................................................2

                 2.     The Claims Review Process....................................4

                       a.     Qualified Claims: ................................4

                       b.     Separating Claims: ..............................5

                 3.     Determining Eligible Class Member Final
                       Settlement Payments..............................................5

           B.     Preliminary Approval Process and Standards..........................7

                 1.     Likelihood of Success on the Merits.........................10

                 2.     Fraud or Collusion ..............................................12

                   3.     Complexity, Expense and Likely Duration of the Litigation......13

                 4.     Discovery Completed..........................................14

                   5.     The Proposed Settlement is the End Product of Arms-Length
                       Negotiations Among Experienced Counsel and is Entitled
                       To Great Weight ................................................14

                   6.     The Proposed Settlement Meets the Public Interest Goals .........15

     II.     THE PROPOSED NOTICE AND NOTICE PLAN IS PROPER AND
           SHOULD BE APPROVED BY THE COURT .................................16

     III.     A PRELIMINARY APPROVAL OF ATTORNEY FEES,
           REIMBURSEMENT OF COSTS AND INCENTIVE AWARDS FOR
            THE NAMED PLAINTIFFS IS APPROPRIATE ............................17

A.    The Attorneys Fee Award ........................................................................17

B.    Reimbursement of Expenses ...................................................................18

C.    Incentive Awards to Named Plaintiffs ...................................................19

CONCLUSION .............................................................................................................19

## INDEX OF AUTHORITIES

**Federal Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)....................................................................................... 14

*Athan v. United States Steel Corp.,* —— F. Supp. 3d ——, *No. 17-CV-14220,*
  2021 WL 805430 (E.D. Mich. Mar. 3, 2021) .......................................... 11

*Bailey v. Great Lakes Canning, Inc.,*
  908 F.2d 38 (6th Cir. 1990) .......................................................................... 9

*Berry v. Sch. Dist. of City of Benton Harbor,*
  184 F.R.D. 93 (W.D. Mich. 1998)................................................................ 8

*Boeing Co. v. Van Gemert,*
  444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)............................... 17

*Brotherton v. Cleveland,*
  141 F. Supp. 2d 894 (S.D. Ohio 2001) ...................................................... 10

*Cannon v. Texas Gulf Sulphur Co.,*
  55 F.R.D. 308 (S.D.N.Y. 1969) ................................................................. 15

*Carson v. Am. Brands, Inc.,*
  450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981)................................... 10

*Cotton v. Hinton,*
  559 F.2d ........................................................................................................ 14

*Dillworth v. Case Farms Processing, Inc.,*
  2010 WL 776933 (N.D. Ohio Mar. 8, 2010) ............................................ 11

*Doe v. Deja Vu Servs., Inc.,*
  No. 2:16-cv-10877, 2017 WL 490157 (E.D. Mich. Feb. 7, 2017) ................. 7, 8, 13

*Does 1-2 v. Deja Vu Servs., Inc.,*
  925 F.3d 886 (6th Cir. 2019) .......................................................... 9, 10, 12

*Fussell v. Wilkinson,*
  No. 1:03-CV-704, 2005 WL 3132321 (S.D. Ohio Nov. 22, 2005) ........................... 7

*Garner Properties & Mgmt., LLC v. City of Inkster,*
  333 F.R.D. 614 (E.D. Mich. 2020) ...................................................... 7, 8

*Granada Invs., Inc. v. DWG Corp.,*
  962 F.2d 1203 (6th Cir. 1992) ......................................................... 10, 15

*In re Austrian and German Bank Holocaust Litig.*,
    80 F. Supp.2d 164 (S.D.N.Y. 2000)........................................................................ 9

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ................................................................... 17, 18

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*,
    410 F. Supp. 659 (D. Minn. 1974)......................................................................... 14

*In re Dry Max Pampers Litig.*,
    724 F.3d ................................................................................................................ 12

*In re Flint Water Cases*,
    No. 516CV10444JELEAS, 2021 WL 5237198 (E.D. Mich. Nov. 10, 2021) ......... 12

*In Re General Motors Pick-Up Truck Litig.*,
    55 F.3d 768 (3rd. Cir. 1995) ................................................................................. 15

*In re Microstrategy, Inc. Sec. Litig.*,
    150 F. Supp. 2d 896 (E.D. Va. 2001) ................................................................... 17

*In re Safety Components, Inc. Sec. Litig.*,
    166 F. Supp. 2d 72 (D.N.J. 2001) ........................................................................ 13

*In re Sulzer Orthopedics Inc.*,
    398 F.3d 778 (6th Cir. 2005) ................................................................................ 18

*In re Synthroid Marketing Litig.*,
    264 F.3d 712 (7th Cir.2001) ................................................................................. 19

*In re Warner Comm. Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ......................................................................... 9

*IUE-CWA, v General Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich 2006) ........................................................................ 11

*Kis v. Covelli Enterprises, Inc.*,
    No. 4:18-CV-434, 2019 WL 3369124 (N.D. Ohio July 26, 2019) ......................... 12

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................................................. 13

*Moulton v. United States Steel Corp.*,
    581 F.3d 344 (6th Cir. 2009) .................................................................................. 3

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)................................................ 16

*Pearson v. Top Flight Ent., LTD.*,
    No. 21-CV-10258, 2021 WL 5756777 (E.D. Mich. Sept. 14, 2021)........................................ 12

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
    636 F.3d 235 (6th Cir. 2011) ................................................................................................ 9

*Ramey v. Cincinnati Enquirer, Inc.*,
    508 F.2d 1188 (6th Cir.1974) .............................................................................................. 17

*Rawlings v. Prudential-Bache Properties*,
    9 F.3d ................................................................................................................................... 18

*Reed v. Rhodes*,
    179 F.3d 453 (6th Cir. 1999) ............................................................................................... 17

*Seifer v. Topsy's Int'l, Inc.*,
    70 F.R.D. 622 (D. Kan. 1976)............................................................................................... 17

*Sheick v. Auto. Component Carrier, LLC*,
    No. 09-14429, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010)................................................. 8

*Tenn. Ass'n of HMOs*,
    HMOs, 262 F.3d 559 (6th Cir. 2001)................................................................................... 10

*Vassalle v. Midland Funding LLC*,
    708 F.3d 747 (6th Cir. 2013) ............................................................................................... 10

*White v. Nat'l Football League*,
    822 F. Supp. 1389 (D. Minn. 1993)................................................................................... 8, 9

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ....................................................................................... 7, 8, 10

## State Cases

*Rafaeli, LLC v. Oakland County*,
    505 Mich. 429, 952 N.W.2d 434 (2020)................................................................................ 1

## Federal Rules

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................................... 16

Fed. R. Civ. P. 23(e) ........................................................................................................ 1, 2, 9, 17

Fed. R. Civ. P. 23(h) ................................................................................................................... 18

Fed. R. Civ. P. 23(h)(1)............................................................................................................... 18

v

## <u>INTRODUCTION</u>

This case involves allegations of unconstitutional actions taken by Defendant during the process of tax foreclosure sales of real property located in Oakland County. Specifically, Plaintiff alleges that Defendant improperly extinguished liens with the Oakland County Register of Deeds in certain instances, namely, when the tax foreclosure sales generated funds in excess of the existing liabilities associated with the homeowner's unpaid taxes.  The Michigan Supreme Court described those excess funds as "surplus funds" in *Rafaeli, LLC v. Oakland County,* 505 Mich. 429, 952 N.W.2d 434, 443-49 (2020). This case mirrors the holding in *Rafaeli,* but applies it to lienholders, such as Plaintiff condominium associations.

The parties' dispute has its origins in the case(s) pending before this Court, several companion state court actions filed against most, if not all, Michigan counties and County Treasurers, and ultimately a groundbreaking decision by the Michigan Supreme Court in the *Rafaeli* case.

Subsequent to the *Rafaeli* decision, Plaintiff Dover initiated discussions with Defendant, prepared for and attended multiple days' worth of mediation with retired judge, Hon. Robbie Barr, and ultimately filed the first complaint on behalf of lien holders alleging that, pursuant to the holding in *Rafaeli,* Oakland County acted in violation of lienholders constitutional rights.  The parties now seek Court approval of a Rule 23(b)(3) class action settlement of those claims on behalf of all lien holders.  Specifically, Plaintiff moves the Court, pursuant to Fed. R. Civ. P. 23(e), for entry of an Order:

(1)   For preliminary approval of the Class Action Settlement Agreement ("Settlement Agreement") (attached as Exhibit 1);

(2)   Approving Class Notice of Settlement Agreement and Notice Plan (attached as Exhibit A to "Settlement Agreement");

1

(3)     For preliminarily approve of an award of expenses and attorney fees to plaintiff's counsel;

(4)     Setting the date for filing of Plaintiff's Motion for Attorneys' fees and costs and briefs in support of Objections or Final Approval to be filed no later than one week prior to the date for Final Fairness hearing; and

(5)     Setting the date and time for the Final Fairness Hearing.

## <u>ARGUMENT</u>

## I.      THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE PRELIMINARILY APPROVED BY THE COURT

### A.      Summary of Key Settlement Terms

The parties jointly request the Court preliminarily approve the settlement agreement attached as Exhibit 1 under Fed. R. Civ. Pro. 23(e). The settlement is comprised of a full class-wide release of claims and dismissal of the instant cause of action in exchange for $940,000.00.  By nature of the foreclosure action and recorded liens, there is a fixed number of class members, all of whom have been identified by search of the Oakland County Register of Deed records.

Notice of the settlement will be mailed to each class member, who will then be eligible to participate in receiving the net settlement funds, or exercise their opt-out rights and retain any and all claims against Defendant. All Class Members who do not opt out of the Settlement will be Eligible Class Members and bound by the Stipulation of Settlement, including its release of claims, and entitled to receive a Settlement Payment.

### 1.      The Claim Form

One particularly challenging aspect of this case arises from a lack of information about the *balance* still owed on the debts underlying the recorded liens.  Normally, lien holders never update the records as to payments or the balance owed on the underlying debts, and thus the recorded lien amounts are likely overstating the actual amounts owed by homeowners to the lienholders.

To rectify this problem, class members will be given a short claim form to fill out and return

2

by a date certain.  (*See* Exhibit A to the Settlement Agreement). Claim forms are an approved

method to make class settlement benefits available to class members. *Moulton v. United States*

*Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009). The form must be signed under penalty of perjury

and asks nine simple and unobtrusive questions:

> Please answer the following questions in order to determine the validity of your claim and the outstanding lien amount.

a.   Are you, or the debt for which the lien was recorded owed to, a bank or other financial lending institution:

_____

b.   What is the address of the property the lien was placed on:
_____

c.   What is the Parcel Identification Number of the property the lien was placed on:

_____

d.   What was the initial lien amount against the property:

_____

e.   Disclose any and all payments on the underlying debt through the present date:

_____

f.   Has the lien been paid in full:

_____

g.   Please state the current balance still owing on the debt:

_____

h.   Has the underlying debt, (or lien) been discharged by some other means that the foreclosure this Litigation refers to (i.e., bankruptcy, divorce, assignment, or other legal proceeding):

_____

i.   Do you have any payment records on the debt, or confirm that they do not exist or are currently not in your possession?  (If so, please attach or include if possible):

_____

The Claim Form questions were designed with assistance from class representative Dover,

3

counsel from both sides and the mediator.  Answers to the Claim Form questions will assist the parties and the Settlement Administrator in processing the claims – including estimating the current balance owed on the recorded liens, the status of the underlying debt, and any payments of those debts by the class members.  For example, the Claim Form requires the class members to confirm that the underlying debt supporting the recorded lien has not been paid in full or otherwise or discharged, for example through bankruptcy, divorce, assignment or other legal proceeding (other than the foreclosure that led to it being extinguished).  It asks whether any payment was made on the underlying debt through the present and if so, the current balance still owing.  And it asks the class member to produce any payment records on the debt, or confirm that they do not currently possess such records. In short, the Claim Form serves as a simple substitute for individual analysis of each lien, which would of course be costly, cumbersome and likely only produce partial responses from class members who were willing to undergo such an examination.[1]

### 2.    The Claims Review Process.

Within twenty one (21) days of the close of the Claims Period the Settlement Administrator shall complete the Claim Qualifying and Adjusting Process for the claim forms of Eligible Class Members.  Eligible Class members are those class members who complete, sign under penalty of perjury and timely submit their claim forms to the Settlement Administrator.  Only Eligible Class Members may receive payment of settlement benefits under this Settlement Agreement.

### a.    Qualified Claims:

The Settlement Administrator shall assemble all timely and completed forms from Eligible Class Members to determine which claims qualify for payment of Settlement Benefits, as follows:

---

[1] Of course, class members who believe such an individual examination of their records and lien rights is warranted can pursue that examination by exercising their right to opt out of the settlement and proceed individually against Defendant.

4

   i. Only one claim form per property shall be qualified for payment of Settlement Benefits. If multiple claim forms are received for the same property based on the same lien, only one shall qualify for payment and only for the amount approved.

   ii. If multiple claim forms are received on the same property from different recorded lienholders, the claim based on the earliest date recorded lien will be eligible for payment from the Fund.

   iii. All claims relating to later-in-time recorded liens shall be excluded from payment and ineligible to receive payment from the Fund.

Only the claims remaining after applying the above qualification process shall constitute the Qualified Claims.  This process removes duplicate claims and inferior liens.

    **b**. **Separating Claims:**

   The Settlement Administrator will review all Qualified Claims and separate them based on the nature of the lienholder. Bank or other financial lending institution liens shall be grouped together and processed as the "Bank Pool Claims". All other liens shall be grouped together and processed as "Non-bank Pool Claims".  The purpose behind separating financial lending institutions form non-financial institutions is to treat non-financial institutions who did not retain payment records more fairly. Their claim values will not be discounted as severely as financial institutions that cannot produce payment records – under the assumption that such institutions normally keep such records and should have in this instance.

    **3.** **Determining Eligible Class Member Final Settlement Payments**

   The Settlement Administrator will compare all claim amounts to the their specific underlying recorded liens to determine whether the claim value, before any reduction for payment provided with the claim (if any exist) is applied, and to determine if the recorded lien amount matches the claimed amounts. This step is possible because all the liens involved in this case were recorded with the Oakland County Register of Deeds, and have been produced. If it can readily be

determined that the claim amount is higher than the recorded lien amount, the recorded lien amount shall replace the claim amount and be used in calculating final payment amounts.

Next, each Eligible Class Member's Settlement Payment shall be calculated according to which category their Qualified Claim falls under as follows:

    iv.   The Settlement Administrator shall reduce all Bank Pool Claims that include payment records, or otherwise indicate any payment amount was made on the underlying debt amount and reduce the stated value of the claim by 50%.

    v.   The Settlement Administrator shall for any Bank Pool Claims not accompanied by any payment records or do not otherwise indicate any payment amount was made on the underlying debt amount, reduce the value of the claim to 5% of the stated value of the claim.

    vi.   The Settlement Administrator shall reduce all Non-Bank Pool Claims in excess of $25,000 to 50% of the stated value of the claim.

    vii.   The Settlement Administrator shall reduce all other Non-Bank Pool Claims to 75% of the state value of the claim.

Each of the above reductions was based on common sense and experience – experience of both Oakland County and Plaintiff class representative.  They were also the subject of negotiation.  For example, claims from the Bank Pool were reduced more severely if no payment records were maintained to provide better treatment for Bank Pool claims that were accompanied by payment records.  Records reflecting payments that were documented gave more credence to the claims than those that do not, especially with Bank Pool claims.  Next the $25,000 threshold was selected by negotiation to once again offer more favorable treatment to those the smaller dollar value lien holders who, in the parties collective experience, were less sophisticated in court or business proceedings, and also, who had less incentive to exercise their redemption right to protect their lien.

Lastly, the Settlement Administrator shall calculate each Eligible Class Member's Final Settlement Payment using the Adjusted Payment Value Formula. Specifically, the Settlement Administrator shall divide each Eligible Class Member's Adjusted Payment Value by the total amount of all Eligible Class Members' Adjusted Payment Values. The Settlement Administrator shall then multiply the pro rata amount by the Net Settlement Fund (the Common Benefit Fund minus all court approved deductions, including settlement administration expenses, class counsel attorneys' fees and costs and class representatives incentive award). The resulting amount shall be the Settlement Benefit Payment Amount for each Eligible Class Member. Essentially, this provides a pro-rata allocation of the net settlement dollars among those class members who participate in and complete the settlement process. There is no reversion of settlements funds to Defendant, and thus all $940,000 will be spent.[2]

### B.      Preliminary Approval Process and Standards

Obtaining court approval of a class action settlement involves a three-step process. *See Doe v. Deja Vu Servs., Inc., No. 2:16-cv-10877, 2017 WL 490157, at *1 (E.D. Mich. Feb. 7, 2017) (Murphy, J.) (citing Fussell v. Wilkinson, No. 1:03-CV-704, 2005 WL 3132321, at *3 (S.D. Ohio Nov. 22, 2005)); see also Williams v. Vukovich, 720 F.2d 909, 920-21 (6th Cir. 1983); Garner Properties & Mgmt., LLC v. City of Inkster, 333 F.R.D. 614, 620 (E.D. Mich. 2020).* The three-step process includes:

1.      Preliminary approval of the proposed settlement at an informal hearing;

2.      Dissemination of mailed and/or published notice of the settlement to all affected class members; and

3.      A formal fairness hearing or final approval hearing, at which Class Members may be heard regarding the settlement, and at which evidence and argument concerning

---

[2] If any settlement checks go uncashed after 180 days, the funds attributable to those uncashed checks will be given to a *cy pres* recipient, Oakland Livingston Human Services Assn..

7

the fairness, adequacy, and reasonableness of the settlement is presented.

*Id.*  This procedure, commonly employed by Federal courts and endorsed by a leading class action commentator, *see* 2 *Newberg on Class Actions* ("Newberg"), § 11.25 *et seq.,* serves the dual function of safeguarding class members' procedural due process rights, and enabling the Court to fulfill its role as the guardian of the interests of the class.   Furthermore, the bar is lower for preliminary approval than it is for final approval.[4] *See, e.g., Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *11 (E.D. Mich. Aug. 2, 2010) ("[T]he Settlement Agreement should be preliminarily approved if it (1) 'does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys,' and (2) 'appears to fall within the range of possible approval.' "); *Deja Vu Servs.*, 2017 WL 490157, at *1 (same); *see also Berry v. Sch. Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998) ("Unless it appears that the compromise embodied in the agreement is illegal or tainted with collusion, the court must order that notice be given to the class of the proposed agreement and must order a fairness hearing.") (citing *Williams*, 720 F.2d at 921).

The purpose of the Court's preliminary evaluation of a proposed class settlement is merely to determine whether the proposed settlement is *within the range* of possible final approval and thus, whether notice to the class of the terms and conditions of the proposed settlement, and the scheduling of a formal fairness hearing, are appropriate.  *White v. Nat'l Football League*, 822 F. Supp. 1389, 1399 (D. Minn. 1993); 2 Newberg § 11.25.  Indeed, the *Manual* characterizes the preliminary approval inquiry as a court's "initial assessment" of the fairness of the proposed settlement, made on the basis of written submissions and informal presentation from the settling parties. *Manual*, § 30.41. The *Manual* further summarizes the preliminary approval criteria as

follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice … be given to the Class Members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Id.*; *see also* 2 *Newberg* § 11.25.  Further:

> If the court finds that the settlement is the product of arm's-length negotiations conducted by experienced counsel, the settlement will enjoy a presumption of fairness.…  Once the settlement is presumed fair, "it is not for the Court to substitute its judgment as to a proper settlement for that of such competent counsel."

*In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp.2d 164, 173-74 (S.D.N.Y. 2000)

(quoting *In re Warner Comm. Sec. Litig.,* 618 F. Supp. 735, 746 (S.D.N.Y. 1985)).

This case is at the first step of the three-step process. At this stage, and before approving a settlement agreement, the Court must determine if the settlement is "fair, adequate, and reasonable, as well as consistent with the public interest." *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990). The Sixth Circuit has established seven factors this court must consider at this stage in the approval process:

> In *UAW*, we established a seven-factor test to assess whether or not a class action settlement is "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e). 497 F.3d at 631. Those factors include: (1) the "risk of fraud or collusion," (2) the "complexity, expense and likely duration of the litigation," (3) the "amount of discovery engaged in by the parties," (4) the "likelihood of success on the merits," (5) the "opinions of class counsel and class representatives," (6) the "reaction of absent class members," and (7) the "public interest." *Id.*

> Of the *UAW* factors, "[t]he most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011).

*Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019)(referring to *International*

Union, UAW, et al. v. General Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007)("UAW").  The district court has " 'wide discretion in assessing the weight and applicability' of the relevant factors." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)). The court may limit the fairness hearing "to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Tenn. Ass'n of HMOs*, 262 F.3d 559, 567 (6th Cir. 2001) (citations omitted). A court should not, at the fairness hearing, "determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties." *Williams v. Yukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 904 (S.D. Ohio 2001). A court "cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.' " *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981)).  For the following reasons, the parties believe that the proposed settlement meets the test for preliminary approval and should be preliminarily approved and notice be issued.

### 1.    Likelihood of Success on the Merits

A court "cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981)). For this reason, all class action settlements involve a balancing of competing interests. When extinguishing the claims of a large class of people—some of whom may not even be aware that a pending lawsuit affects their rights—courts are required to closely analyze whether the claims that the unnamed class members are giving up are worth the benefits they may receive. *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 895 (6th Cir. 2019).

Here, the lien holder claims face strenuous legal challenges. First, Plaintiffs would be required to establish that the holding as to homeowner claims in *Rafaeli* applied to lienholders – something the Michigan Supreme Court did *not* expressly address.  Even then, the question of retroactive application of the *Rafaeli* holding is currently on appeal.  As a constitutional case, the *Rafaeli* holding was groundbreaking and essentially changed the way Michigan counties conducted tax foreclosures in Michigan vis-à-vis surplus funds. For both reasons, there is a real danger that lienholders do not have any viable right to recover any money on their liens from Defendant.

In addition, there are several other defenses arising from the intricacies of the tax foreclosure and lien process.  (See Exhibit 2, *Thompson Declaration at ¶20*).  Lastly, the foreclosure statute itself terminated most other non-municipal lienholders' rights, which would include class members.  Thus, here, more so than most cases, "Whatever the relative merits of the parties' positions, there is no such thing as risk-free, expense-free litigation." *IUE-CWA, v General Motors Corp.,* 238 F.R.D. 583, 596 (E.D. Mich 2006).

For these reasons, the parties have significantly discounted the $13,444,321.60 corresponding surplus amounts of the recorded liens that were recorded during the class period. The $940,000 settlement fund represents approximately 7% of the face value. *See Athan v. United States Steel Corp.*, ––– F. Supp. 3d ––––, No. 17-CV-14220, 2021 WL 805430, at *4 (E.D. Mich. Mar. 3, 2021) (noting that "the average recovery in class actions is seven (7%) to eleven (11%) percent of the claimed damages) (citing *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010).

When considering the value of class member claims, the Court should also consider the viability of the many defenses Defendant has to liability and damages – which as explained, could

be 100%. (*Id*. at 896).  In addition, the likelihood that class members will not pursue their claims is a relevant factor when assessing the trade-off between the proposed settlement benefits or retaining the right to sue Defendant. (*Id*. at 897; citing *In re Dry Max Pampers Litig.*, 724 F.3d at 723 ("The conventional argument for class action lawsuits is that the majority of class members' claims would not otherwise be worth bringing.").  For these reasons, the parties incorporated a claims process to adjust the claimed amounts owed by class members to reflect the relative strength and weaknesses of the various liens. [Settlement Agreement ¶7]  The Sixth Circuit has approved similar reductions in cases where class members faced similar obstacles to recovery. *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 896 (6th Cir. 2019)(holding settlements that were based on "imperfect damage models based on the lack of records for many class members" could still meet the test for court approval.).

### 2.    Fraud or Collusion

*UAW* also instructs courts to consider the risk of fraud or collusion. *898 *UAW*, 497 F.3d at 631; *Does 1-2 at* 897–98.  The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary. 4 *Newberg* § 13:48 (5th ed. June 2021 update).  Here, the parties employed a third party experienced mediator, Ret Hon Robbie Barr. Use of a third party mediator reduces the likelihood of the parties reaching a collusive settlement. *In re Flint Water Cases*, No. 516CV10444JELEAS, 2021 WL 5237198, at *23 (E.D. Mich. Nov. 10, 2021), *motion to certify appeal denied,* No. 5:16-CV-10444, 2021 WL 5833416 (E.D. Mich. Dec. 8, 2021)("[T]here appears to be no better evidence of [a truly adversarial bargaining process] than the presence of a neutral third party mediator[.]"); *Kis v. Covelli Enterprises, Inc.*, No. 4:18-CV-434, 2019 WL 3369124, at *5 (N.D. Ohio July 26, 2019); *Pearson v. Top Flight Ent., LTD.*, No. 21-CV-10258, 2021 WL 5756777, at *2 (E.D. Mich. Sept. 14, 2021).   Lastly, the fees

12

negotiated are based on a reasonable one-third (1/3) percentage of the Common Benefit Fund..

### 3.    Complexity, Expense and Likely Duration of the Litigation

Another *UAW* factor is the complexity, expense, and likely duration of the litigation. 497 F.3d at 631; *Does 1-2 at* 898.  The alternative to settlement – continued and active litigation – brings with it several added hurdles that should be considered.  For example, as a result of the missing information on the underlying balance for each lien, a second phase of litigation would be necessary to establish individualized issues, even assuming plaintiffs were successful in the first trial.  Second, there is the likelihood of an appeal to the Supreme Court on the application of *Rafaeli* to the lien holders, not to mention the retroactive application issue. Factoring the risk associated with Plaintiffs' current case, the proposed settlement benefits constitute a reasonably compromised payment on the available approximation of the Class Member damages if they were fully successful at trial, while eliminating the risk of no recovery should the current Plaintiffs not prevail at trial.  Moreover, the present settlement proposal achieves these benefits on a *class-wide* basis while eliminating the potential pitfalls of trial, or even multiple trials, in the face of Defendant's vigorous objections.  *See Doe*, supra.

In light of the above, the Settlement provides substantial and immediate relief without additional expenses and long delay, and this factor militates in favor of approving the settlement. *See, e.g., Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (concluding that "[d]elay, not just at the trial stage but through post-trial motions and the appellate process would cause Class Members to wait years for any recovery"); *In re Safety Components, Inc. Sec. Litig.,* 166 F. Supp. 2d 72, 85 (D.N.J. 2001) ("even if the Plaintiff were to recover a larger judgment at trial, which is not guaranteed, the additional delay caused by a trial, post-trial motions and the appellate process, would delay recovery for years").

### 4.      Discovery Completed

The fact that the case was settled prior to filing the Complaint is not a bar to approval. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).  Here, all discovery was completed during the approximate year preceding mediation, and before the complaint was filed.  While informal, the effort was focused and involved all of the information one would want before attempting to negotiate a settlement. It included an exchange of legal research, a Michigan Supreme Court opinion being issued, multiple hours in discussions with the class representative; even more hours in discussions with various lawyers representing homeowners in companion cases; obtaining verified lien data form Oakland County, and follow up meet and confers with defense counsel to explain the data; and discussions with Oakland County counsel – both inside and out – as to the County's experiences with various lienholders and settling other lien holder lawsuits. (See Exhibit 2, *Thompson Declaration at ¶10-16; 23-24*).    The amount of discovery was more than adequate to prepare Plaintiffs and their counsel for mediation (*Id.* at *¶25).*

### 5.      The Proposed Settlement is the End Product of Arms-Length Negotiations Among Experienced Counsel and is Entitled to Great Weight

As set forth above, this proposed settlement is the product of arms-length negotiations between Plaintiffs' and Defense counsel, all of whom are experienced in this type of complex litigation.  As such, the settlement proposal is entitled to great weight.  *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974); *see also Cotton v. Hinton*, 559 F.2d at 1330 (holding that in analyzing a class settlement, trial court may rely on judgment of experienced counsel and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel").  The Court should also give great weight to the fact that the Plaintiffs, Defendant and their Counsel unanimously support the

14

proposal. *Cannon v. Texas Gulf Sulphur Co.*, 55 F.R.D. 308, 316 (S.D.N.Y. 1969).

As counsel for both parties can attest, this Settlement was achieved through arm's-length negotiations by experienced class action counsel after they conducted a full evaluation of the strengths and weaknesses of their respective positions.  The history of the parties' settlement negotiations is set forth in the attached declaration of Jason J. Thompson.  Counsel for the Plaintiffs and the Class have substantial class action litigation experience. (*Id.*)  Likewise, counsel for Defendant has defended class action cases multiple times and in fact was counsel in the groundbreaking *Rafaeli* case itself.  In short, it simply cannot be disputed that the proposed settlement was the product of arms-length negotiations among experienced counsel who were familiar with the underlying legal and factual issues.

### 6.    The Proposed Settlement Meets the Public Interest Goals

The proposed settlement confers substantial benefits to the Settlement Class and is consistent with the public interest.  "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." quoting *Granada Inv., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992).  As described above, the proposed settlement provides a significant remedy - $940,000 - on a *class-wide basis* to Class members who may not attain any benefit whatsoever absent the proposed settlement. In light of the all or nothing stakes of the current appeal on the retroactive application of *Rafaeli*, the lack of a holding on the lienholders claims, and the defenses on the merits of the lien holder claims, there is much to lose if preliminary approval is denied.

In addition, the Proposed Settlement in this case represents a reasonable compromise of difficult issues that are hotly contested and were negotiated among the parties. *See In Re General*

*Motors Pick-Up Truck Litig.*, 55 F.3d 768, 800-01 (3rd. Cir. 1995)(vacating class settlement which provided remedy indirectly and not to all settlement class members). Simply put, the parties have constructed a process whereby lienholders can now get payment on their liens when before this case they could not.

Furthermore, the claims process serves to provide class members with a reasonable and simple method for calculating a fair repayment on their liens, and avoids costly, cumbersome and flawed alternatives, all of which could easily consume the available funds and leave class members with much less, or even nothing. And as with all Rule 23(b)(3) settlements, anyone can opt out and go it alone if they disagree with the proposed settlement and process.

**II      THE PROPOSED NOTICE AND NOTICE PLAN IS PROPER AND SHOULD BE APPROVED BY THE COURT**

Rule 23(c)(2) requires that notice to the class be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 629–30 (6th Cir. 2007) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

The parties have jointly prepared a Class Notice to the class members that is consistent with all class action notice requirements. The format is used in class actions throughout the country. It is clear and advises the class of their rights, the benefits of the settlement, the request for fees and expenses and how the claims process will unfold. The full long-form notice (Exhibit A) will be mailed First Class Mail to every class member who received notice of the class certification, as well

16

as new addresses of class members who have advised class counsel of their current addresses.  In addition, the short-form notice will be published in the local newspaper, *The Oakland Press*.  These Notices will fairly inform the Class Members of the terms of the proposed settlement and their options, and satisfy the requirements of due process and F. R. Civ. P. 23(e). *See, e.g., In re Microstrategy, Inc. Sec. Litig.,* 150 F. Supp. 2d 896, 907 (E.D. Va. 2001) (approving class action settlement and concluding that combination of direct mail notice and publication in newspaper was "best practicable notice"); *Seifer v. Topsy's Int'l, Inc.,* 70 F.R.D. 622, 626 (D. Kan. 1976) (same).

## III.   A PRELIMINARILY APPROVAL OF ATTORNEY FEES, REIMBURSEMENT OF COSTS AND INCENTIVE AWARDS FOR THE NAMED PLAINTIFFS IS APPROPRIATE

### A.   The Attorneys Fee Award

The United States Supreme Court and the Sixth Circuit approve of attorney fee awards from common benefit funds created in class action settlements, "It is well established that 'a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, at 531-32 (E.D. Mich. 2003)(quoting *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980).[3]  The Sixth Circuit has held that an award of attorney's fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel, but ... [does] not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).  An award of attorneys' fees and expenses lies within the discretion of the trial court. *Ramey v.*

---

[3] The Supreme Court, held that district court properly awarded attorney fees from total amount of class action judgment, including the unclaimed portion of judgment, since each class member had present vested interest in class recovery and could collect his share of judgment upon request, and thus absentee class members had received a benefit within meaning of common fund doctrine which allows assessment of attorney fees against a common fund created by lawyers' efforts.

*Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir.1974), *cert. denied,* 422 U.S. 1048, 95 S.Ct. 2666, 45 L.Ed.2d 700 (1975); Fed. R. Civ. P. 23(h).

The Parties Settlement Agreement provides for payment of attorneys' fees out of the $940,000 common fund, and to be based on a percentage calculation, with the standard percentage of one-third (1/3) of the Common Benefit Fund.  (See Exhibit 1 Settlement Agreement ¶9).  Courts generally have discretion to apply either the percentage of the fund or the lodestar method in calculating fee awards. *See Rawlings*, 9 F.3d at 516-17; *Cardizem*, 218 F.R.D. at 532.  And multipliers (enhancements of the loadstar rate) are not uncommon in class action settlement cases to enhance the lodestar figure in recognition of the "risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved." *Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 515-17 (6th Cir. 1993); see also *In re Sulzer Orthopedics Inc.,* 398 F.3d 778, 780, 922 (6th Cir. 2005).

Pursuant to Fed. R. Civ. P. 23(h)(1), Plaintiffs' counsel will file a separate motion prior to the final fairness hearing supporting the reasonableness of their fee request and requesting the Court approve an award of reasonable attorneys' fees to be paid from the $940,000 settlement fund.  But for this stage, the current fee does not result in excessive fees based on a review of the hours worked, because it is a lodestar calculation based on hours worked and hourly rates. (See *Thompson Declaration* at ¶26-30). Lastly, the class representatives support the current motion and petition for fees and expenses. (*Id*. at ¶32).  Again, a more formal brief will be provided to the court prior to the final fairness hearing, along with any time record information the court would need to evaluate the reasonableness of the request. (*Id*. at ¶31).

### B.    Reimbursement of Expenses

In addition to their request for Attorneys' fees, Plaintiffs' Counsel seek reimbursement of

approximately $4,964.30 in expenses, to be determined in the exact amount at the final fairness hearing, together with additional supported expenses up until the date of final distribution incurred in connection with settlement administration.  Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses. "Expense awards are customary when litigants have created a common settlement fund for the benefit of a class." *F & M Distribs., Inc. Sec. Litig.,*1999 U.S. Dist. LEXIS 11090, at *20. Class counsel has reviewed accounting records and invoices, and can attest to the appropriateness and necessity of the costs. (*Id*. at ¶30).  The requested expenses and costs are the type routinely billed by attorneys to paying clients in similar cases. *See In re Synthroid Marketing Litig.,* 264 F.3d 712, 722 (7th Cir.2001). *Id.*

C. **Incentive Awards to Named Plaintiffs**

Finally, Plaintiffs' Counsel request the approval of incentive award of $2,500 be awarded to the representative plaintiff in this action whose contributions to the litigation merit special consideration. Such awards are common in class actions such as this. *See F & M Distribs., Inc. Sec. Litig.,*1999 U.S. Dist. LEXIS 11090, at *20. The named Plaintiff undertook varying levels of burden and risk on behalf of the Class. These Plaintiffs incurred demands on their time and expenses, including several client meetings to educate Plaintiff's counsel, and during the mediation. Class counsel request a modest award of $2,500 to the named class representative, Dover.

**CONCLUSION**

Based on the foregoing, the parties jointly request that the Court grant the instant motion and enter an Order:

19

1   For preliminary approval of the Class Action Settlement Agreement ("Settlement Agreement") (attached as Exhibit 1);

2   Approving Class Notice of Settlement Agreement and notice plan (attached to the Settlement Agreement as Exhibit A);

3   For preliminarily approval of an award of expenses and attorneys' fees to Plaintiff's counsel;

4   Setting the date for filing of Plaintiff's Motion for Attorneys' fees and costs and briefs in support of Objections or Final Approval to be filed no later than one week prior to the date for Final Fairness hearing; and

5   Setting the date and time for the Final Fairness Hearing.

Respectfully submitted,

Dated July 12, 2022                           SOMMERS SCHWARTZ, P.C.

*/s/ Jason J. Thompson*
Jason J. Thompson (P47184)
Kathryn E. Milz
One Town Square, 17th Floor
Southfield, MI  48076
(248) 355-0300
jthompson@sommerspc.com
kmilz@sommerspc.com

*Attorney on behalf of Plaintiff*
*Dover Glen Condominium Association*

## CERTIFICATE OF SERVICE

I certify that on July 12, 2022, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jason J. Thompson*
Jason J. Thompson (P47184)
Attorney for Plaintiff
One Towne Square, Suite 1700
Southfield, MI  48076
(248) 355-0300
jthompson@sommerspc.com