UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOVER GLEN CONDOMINIUM
ASSOCIATION, on behalf of
themselves and others similarly situated,

                    Plaintiff,

                                                    Civil Case No. 22-11468
v.                                                  Honorable Linda V. Parker

OAKLAND COUNTY,
a Government Unit,

                    Defendant.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT

This is a diversity action under the Class Action Fairness Act ("CAFA"). On

June 29, 2022, Plaintiff Dover Glen Condominium Association, on behalf of a

class of individuals ("Plaintiff"), filed this class action under Michigan's

Constitution, the Fifth Amendment Takings Clause, and the Fourteenth

Amendment's Procedural and Substantive Due Process Clauses alleging that

Defendant Oakland County ("Defendant") foreclosed on Plaintiff's property and

kept the "surplus funds" of the foreclosure sale. (ECF No. 1.) On July 12, 2022,

Plaintiff filed a "Motion and Memorandum of Law in Support of Preliminary

Approval of: Proposed Class Action Settlement; Notice and Notice Plan; and

Attorney Fee Expense Award." (ECF No. 10.) The Court granted preliminary

approval of the Settlement Agreement on September 30, 2022.  (ECF No. 15.)  On

November 22, 2022, the Court held a Fairness Hearing, and on the same day,

Plaintiff filed "Plaintiff's Unopposed Motion for Final Approval of Class

Settlement, Enhancement Awards to Class Representatives and Attorneys' Fees

and Costs." (ECF No. 16.)  Without affecting the finality of this Order, the Court

retains jurisdiction over the implementation of the Settlement Agreement, any

award or distribution of the Settlement Fund (including the validity of any claims)

and any efforts to resolve any disputes related to the Settlement Agreement,

including the scope of the releases and covenants not to sue.

## BACKGROUND

Plaintiff operated condominiums in Madison Heights, Michigan.

Occasionally, Plaintiff assessed and collected dues and other charges owed by its

residents.  When residents failed to pay the charges, Plaintiff recorded liens on the

properties.  On May 3, 2017, Plaintiff filed and recorded a lien with the Oakland

County Register of Deeds against a property located at 266 East 13 Mile Road,

Apartment 22, Madison Heights, Michigan, 48071 (the "Condo").

At the time of the tax foreclosure on the Condo, Plaintiff states that it had an

interest in the Condo in the form of a recorded lien in the amount of $3,957.00.

Additionally, at the time of the foreclosure, the owners of the Condo owed

approximately $4,753.88 (the "Owed Amount") to Defendant for delinquent taxes,

interests, penalties, and fees related to the foreclosure and sale of the Condo.

Following the foreclosure, the Treasurer directed that the Condo be sold at auction.

On August 7, 2017, the Treasurer, on behalf of Defendant, deeded the Condo to a

third party and received net proceeds of $40,000.00 from the sale.  According to

Plaintiff, the net amount received from Defendant's auction sale of the Condo

exceeded the Owed Amount by at least 43,246.12 ("Surplus Proceeds").

Defendant retained the Surplus Proceeds, and they were deposited into the

Defendant's General Fund account.

On June 29, 2022, Plaintiff filed this lawsuit on behalf of the following

class:

> All persons or entities who recorded liens with the
> Oakland County Register of Deeds in which surplus
> proceeds were generated from tax foreclosure sales during
> the class period

(ECF No. 1 ¶ 25, Pg ID 4.)  In the Complaint, Plaintiff alleges that Defendant's

retention of the Surplus Proceeds violates federal and Michigan law, and in light of

the 2020 Michigan Supreme Court decision in *Rafaeli, LLC v. Oakland County*,

Plaintiff is entitled to the Surplus Proceeds.  *See* 952 N.W.2d 434, 443–49 (Mich.

2020).

## Settlement Terms

The settlement comprises a full class-wide release of claims and dismissal of the action in exchange for $940,000.00.[1] The parties represented to the Court that all class members have been identified by the Oakland County Register of Deeds' records.  Further, parties mailed a notice to each member who was eligible to receive net settlement funds, which yielded approximately nineteen (19) claims being filed, and no objections.  (*See* Lechner Decl. ECF No. 16-1 ¶¶ 11, 15 at Pg ID 153.)

Parties represented that there was a lack of information related to the balance owed on the debts based on the recorded liens. To solve this issue, class members were provided a short claims form, which asked them numerous questions, including the following: "What was the initial lien amount against the property;" "Please state the current balance owing on the debt;" and "Do you have any payment records on the debt, or confirm they do not exist or currently not in your possession." (ECF No. 10 at Pg ID 38.)  The parties provided that twenty-one (21) days after the close of the claims period, the settlement administrator would

---

[1] The amount of surplus from the compiled recorded liens is $13,444,321.60.  (ECF No. 10 at Pg ID 46.)  The $940,000 settlement fund represents approximately 7% of the face value.  *See Athan v. United States Steel Corp.*, No. 17-CV-14220, 2021 WL 805430, at *4 (E.D. Mich. Mar. 3, 2021) (noting that "the average recovery in class actions is seven (7%) to eleven (11%) percent of the claimed damages)

complete a Claim Qualifying and Adjusting Process for the claim forms.  Claims

that qualify to receive payment will be those with timely completed forms. The

parties also decided to separate claims between "Bank Pool Claims" and "Non-

Bank Pool Claims," with the purpose of "treat[ing] non-financial institutions who

did not retain payment records more fairly." (*Id.* at Pg ID 40.)  The assumption

here is that financial institutions generally keep records of payments where non-

financial institutions may not, so this would protect them from disqualification.

Payments to class members will be calculated using an Adjusted Payment Value

Formula.[2]  This provides a pro rata allocation to class members, with no reversion

of funds to Defendant.  Further, any remaining funds, which includes settlement

checks that go uncashed after 180 days, will be paid to the Oakland Livingston

Human Services Association.  Finally, parties note that the time for class members

to file their claim remains open until January 19, 2023.

### LEGAL STANDARD

Rule 23(e) of the Federal Rules of Civil Procedure sets forth the procedures

for the settlement of class actions.  Pursuant to the rule, the court's role is to

---

[2] The Settlement Administrator will divide the payment value for each class member by the total amount of class members payment value, then multiply the pro rata amount by the Net Settlement Fund (minus "court approved deductions, including settlement administration fees, [attorney's] fees and class representatives incentive award.).  (*See* ECF. No. 10 at Pg ID 42.)

determine whether the proposed settlement is "fair, reasonable, and adequate."

Fed. R. Civ. P. 23(e)(2).  In making this determination, the court considers

"'whether the interests of the class as a whole are better served if the litigation is

settled rather than pursued.'"  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508,

522 (E.D. Mich. 2003) (quoting Manual for Complex Litigation (Third), § 30.42 at

238 (1995)).  As one judge in this District has observed:

> "In assessing the settlement, the Court must determine 'whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.'" *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) (quoting *Fisher Bros. v. Cambridge-Lee Indus.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985)). An appropriate range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Under this standard, "[a] just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Antitrust Litig. (II)*, 659 F.2d 1322, 1325 (5th Cir. 1981).

*Int'l Union v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *21 (E.D.

Mich. July 13, 2006), aff'd sub nom. *UAW v. Gen. Motors Corp.*, 497 F.3d 615

(6th Cir. 2007).

Courts in the Sixth Circuit find eight factors relevant in considering whether

a class action settlement is fair, adequate, and reasonable:

> "(1) the risk of fraud or collusion; (2) the complexity,
> expense and likely duration of the litigation; (3) the
> amount of discovery engaged in by the parties; (4) the
> likelihood of success on the merits; (5) the opinions of
> class counsel and class representatives; (6) the reaction of
> absent class members; and (7) the public interest."

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) (quoting *UAW v.*

*Gen. Motors Corp.*, 497 F.3d at 631). "The district court enjoys wide discretion in

assessing the weight and applicability of these factors." *Granada Investments, Inc.*

*v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992); *see also Ford Motor Co.*,

2006 WL 891151, at *14 ("The court may choose to consider only those factors

that are relevant to the settlement at hand and may weigh particular factors

according to the demands of the case.").

## APPLICATION

### 1. Fraud or Collusion

"[C]ourts presume the absence of fraud or collusion in class action

settlements unless there is evidence to the contrary." *Sheick v. Auto. Component*

*Carrier LLC*, No. 09-14429, 2010 WL 4136958, at *19 (E.D. Mich. Oct. 18, 2010)

(citing *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)).

Here, there is no evidence to the contrary.

### 2. Complexity, Expense, and Likely Duration of the Litigation

Parties provide convincing evidence that the settlement will avoid complex,

expensive, and perhaps protracted litigation. This includes the aforementioned

missing balances of the liens at dispute. Additionally, parties note benefits of a class-wide settlement eliminates delays caused by trial, post-trial motions, appeals, and the overall expense of a potential litigation.  The settlement provides an immediate, significant, and certain recovery for class members.  This factor favors the Court's approval of the settlement.

### 3. Discovery

The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement.  *See In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001). "[C]ourts do not require formal discovery so long as the parties have adequate information in order to evaluate the relative positions."  *Scheick*, 2010 WL 4136958, at *19 n.3 (quoting *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004) ("Formal discovery [is not] a necessary ticket to the bargaining table.")).

Counsel engaged in sufficient discovery to calculate the risks involved in continued litigation. Discovery occurred for approximately a year before they sought mediation, so parties had all the information required to negotiate an adequate settlement.  The information included the following:

> [A]n exchange of legal research, a Michigan Supreme Court opinion being issued, multiple hours in discussions with the class representative; even more hours in discussions with various lawyers representing

homeowners in companion cases; obtaining verified lien data form [sic] Oakland County, and follow up meet and confers with defense counsel to explain the data; and discussions with Oakland County counsel – both inside and out – as to the County's experiences with various lienholders and settling other lien holder lawsuits.

(ECF No. 10 at Pg ID 49.)  For these reasons, this factor favors approval of the Settlement.

### 4. Likelihood of Success on the Merits

When considering this factor, the court balances the plaintiff's likelihood of success on the merits against the relief offered in the settlement.  *Gen. Motors Corp.*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) ("[W]e cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.'")).  "The determination of a reasonable settlement 'is not susceptible to a mathematical equation yielding a particularized sum,' but turns on whether the settlement falls within a range of reasonableness." *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 174 (E.D.N.Y. 2012); *see also Ohio Pub. Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 6 (N.D. Ohio 1982) (courts consider "the range of reasonableness of the settlement fund in light of the best possible recovery.").

Here, Plaintiffs faced serious risks both on the merits of their claims and on the ability to try this matter on a class basis.  The settlement accomplishes what

9

parties wanted and is adequate given the costs, risks, and delay of trial and appeal.

For these reasons, this factor favors approval of the settlement.

### 5. Opinion of Class Counsel

As to the fifth factor, courts recognize that the opinion of experienced,

informed, and competent counsel in favor of settlement should be afforded

substantial consideration. *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.

1983); *IUE-CWA*, 238 F.R.D. at 597 ("The judgment of the parties' counsel that

the settlement is in the best interest of the settling parties 'is entitled to significant

weight, and supports the fairness of the class settlement.'").  Plaintiff's counsel,

Jason J. Thompson, has extensive experience handling class action cases.

Defendant's counsel, John R. Fleming and William H. Horton, also have extensive

experience with class action lawsuits, including acting as counsel in the *Rafaeli*

case.  Therefore, this factor also favors approval of the settlement.

### 6. Reaction of Absent Class Members

As stated earlier, parties represent that there were no objections to the

settlement.  The lack of objections combined with the fact that no class members

opted-out to date, provides convincing evidence that the settlement is fair,

reasonable and adequate. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d

631, 640 (E.D. Pa. 2003) (quoting *In re Art Materials Antitrust Litig.*, 100 F.R.D.

367, 372 (N.D. Ohio 1983)) ("'[T]his unanimous approval of the proposed

10

settlement[ ] by the class members is entitled to nearly dispositive weight in this court's evaluation of the proposed settlement.'"").  As such, this factor weighs in favor of approval of the settlement.

### 7.  Public Interest

The public interest is served by the resolution of this matter because the $940,000 provides a significant remedy to class members who may not obtain any relief absent the class settlement.  Additionally, parties note that "the claims process serves to provide a reasonable and simple method for calculating fair repayment on their liens, and avoids costly, cumbersome and flawed alternatives." (ECF No. 10. at Pg ID 51.)  The Court agrees.  For these reasons, this factor favors approval of the Settlement.

### Attorneys' Fees, Reimbursements, and Enhancement Award

The 33.1/3 percent fee award, or $318,000, requested by Plaintiff's counsel appears to be more than reasonable.  The amount sought here is approximately within the range of percentage fee awards generally accepted in this District.  *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. at 532 (recognizing that fees of 20-30% are generally awarded in the Sixth Circuit); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, *19 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions.").

11

Counsel also seeks reimbursement of expenses for the costs associated with legal research, discovery, travel, transportation, court fees, mailings, and postage. (ECF No. 16 at Pg ID 147.)  Typically, "[p]revailing parties are usually entitled to costs." *Hadix v. Johnson*, 322 F.3d 895, 899 (6th Cir. 2003) (citing Fed. R. Civ. P. 54(d)). The Court finds this request to be reasonable.

Finally, counsel requests approval of an enhancement award, or incentive award, of $2,500 for the named Plaintiff due to taking on burdens and risks on behalf of the class.  The Sixth Circuit determined that incentive awards for class representatives may be appropriate in some cases but has yet to define the exact circumstances justifying incentive awards.  *See Hadix*, 322 F.3d at 898.  However, the Sixth Circuit recognizes "[i]ncentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit."  *Id*. (noting that "when a class-action litigation has created a communal pool of funds to be distributed to the class members, courts have approved incentive awards to be drawn out of that common pool.")

Here, Plaintiff initiated the lawsuit and has adequately represented the class.  Also, the requested amount of a $2,500 incentive award out of a $940,000 settlement is well within the normal range that is awarded.  *See e.g., Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving incentive awards of $50,000 to each of the class representatives out of a

settlement fund of $56.6 million); *In re Dun & Bradstreet Credit Servs. Customer Litig.,* 130 F.R.D. 366, 373–74 (S.D. Ohio 1990) (approving incentive awards ranging from $35,000 to $55,000 out of a $18 million settlement fund); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913–14 (S.D. Ohio 2001) (granting a $50,000 incentive award out of a $5.25 million fund).  As such, this Court finds that the attorneys' fees, reimbursement fees, and incentive award are appropriate.

## CONCLUSION

The above factors lead this Court to conclude that the Settlement Agreement is fair, reasonable, and adequate and entitled to final approval.

Accordingly,

**IT IS ORDERED** that Plaintiff's Unopposed Motion for Final Approval of Class Settlement, Enhancement Awards to Class Representatives and Attorneys' Fees and Costs (ECF No. 16.) is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: November 30, 2022